FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 24 2021

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LATRICIA EPPS, individually and on
behalf of all others similarly situated                                    PLAINTIFF

v.                                Case No. 4:21-cv-750-KGB

STAT INFORMATIC SOLUTIONS, LLC                                             DEFENDANT

### ORIGINAL CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, Latricia Epps, individually and on behalf of all others similarly situated, by and through her attorneys Chris Burks WH LAW, for her Class and Collective Action Complaint against the Defendant Stat Informatic Solutions, LLC, states:

### I. Introduction

1. Plaintiff Latricia Epps applied for a position as a Release of Information Specialist with the Defendant. It was an office job without manual labor or travel requirements, as safe as any office job can be. Yet she was denied this position for being a medical marijuana patient.

2. Specifically, Plaintiff Epps was denied employment in a non-safety sensitive position solely because of her medical marijuana use away from work, in direct contravention of Amendment 98 to the Arkansas Constitution.

3. The voters of Arkansas overwhelmingly passed Amendment 98 to their Constitution, which requires that "an employer shall not discriminate against" an "employee…based upon the employee's status as a qualifying [medical marijuana] patient."

4. Under Amendment 98, employers can have a "drug testing program," can decline to hire applicants or can fire employees based on use of drugs "on premises," and can decline to hire medical marijuana patients or fire current employees for failing a drug screen for drugs other

This case assigned to District Judge Baker
and to Magistrate Judge Erwin

Page 1 of 11

than marijuana. Employers can also decline to hire or fire a medical marijuana patient in a "safety-sensitive position."

5.  However, employers cannot decline to hire or fire a medical marijuana patient for a non safety-sensitive position simply on the basis of the Plaintiff being a medical marijuana patient and using a prescribed drug (marijuana) away from work.

6.  Yet that is exactly what Defendant did to Plaintiff.

## II. Jurisdiction and Venue

7.  Plaintiff is an individual resident of Pulaski County, Arkansas.

8.  The incidents giving rise to this cause of action occurred in Pulaski County, Arkansas.

9.  Defendant Stat Informatic Solutions, LLC, is foreign limited liability company, that is headquartered at N2273 Butternut Rd., Waupaca, WI 54981, and that is able to be served by its Registered Agent, Cogency Global, Inc., at 901 S. Whitney Way, Madison, WI 53711.

10. This is a cause of action against Defendant for violations of Amendment 98 to the Arkansas Constitution and the Arkansas Civil Rights Act (hereafter called "ACRA") A.C.A. §§ 16-123-107(a)(1) and -105.

11. This Court has jurisdiction over this cause of action under A.C.A. § 16-123-105, and venue properly lies in this county under the provisions of A.C.A. § 16-60-108 and A.C.A. § 16-60-116.

## III. Factual Allegations

12. Defendant has contracts with hospitals across the country to provide medical records document management and related services.

13. Plaintiff Latricia Epps submitted an application with the Defendant for a Release of Information Specialist position. She understood this position would be working for the Defendant out of the Medical Center of South Arkansas in El Dorado, Arkansas.

14. Plaintiff Epps was interviewed for the position and received a job offer from the Defendant pending the Plaintiff passing various clearances. She was told her start date would be April 28, 2021.

15. Plaintiff informed the Defendant at the time the offer was made that she was a medical marijuana patient.

16. The Defendant subsequently informed the Plaintiff that the Medical Center of Southwest Arkansas would not allow her to work in their facility without a "clean" drug screen, i.e. one that was not positive for marijuana, even though the Plaintiff possesses a medical marijuana card.

17. The Defendant then withdrew the job offer they made to the Plaintiff without even sending her for a drug screening.

18. The Release of Information Specialist was not listed as "safety sensitive" in writing on the application for the position, nor in the job description for the position provided by the Defendant at the time they offered the position to the Plaintiff.

19. The Plaintiff had no reason to believe her medical marijuana use would prohibit her from being hired for this position, as the Defendant did not designate it in writing as "safety sensitive" in the application or job description.

20. None of the "essential functions" listed in the job description are safety sensitive duties.

21. Defendant was at all relevant times an employer within the meaning of the ACRA and Arkansas Constitution.

22. Defendant intentionally did not proceed with Plaintiffs' employment because of her medical marijuana patient status despite their knowledge of the law prohibiting such discrimination and knowledge of Plaintiffs' status as qualifying patients.

23. Merely because the facilities the Defendant contracts its employees to work in require a drug-free workplace does not mean Defendant can decline to hire or fire a medical marijuana patient for a non safety-sensitive position.

## IV. First claim for relief:
## Individual violations of Amendment 98 to the Arkansas Constitution

24. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

25. Defendant deprived Plaintiff of her rights, privileges, and immunities as set forth in Amendment 98 to the Arkansas Constitution and engaged in unlawful employment practices in violation of Ark. Code Ann. § § 16-123-101, *et seq*.

26. Specifically, Defendant discriminated against the employee Plaintiff Epps because of her status as qualifying medical marijuana patient.

27. At all relevant times, Plaintiff could perform the essential functions of the position to which she was hired.

28. However, Plaintiff Epps was denied employment because of her status as a qualifying medical marijuana patient.

29. Amendment 98 to the Arkansas Constitution makes clear that the mere existence of a drug-testing policy at the location where employees will be working does not mean an employer

can fire or decline to hire a medical marijuana patient for a non safety-sensitive position simply because they possess a medical marijuana card and test positive for marijuana on a drug test.

30. The exact text of the relevant portion of Section 3 of Amendment 98 reads that:

(f)(3)(A) An employer shall not discriminate against an applicant or employee in hiring, termination, or any term or condition of employment, or otherwise penalize an applicant or employee, based upon the applicant's or employee's past or present status as a qualifying patient or designated caregiver.

(B) A cause of action shall not be established against an employer based upon, and an employer is not prohibited from, any of the following actions:

(i) Establishing and implementing a substance abuse or drug-free workplace policy that may include a drug testing program that complies with state or federal law and taking action with respect to an applicant or employee under the policy;

(ii) Acting on the employer's good faith belief that a qualifying patient:

(a) Possessed, smoked, ingested, or otherwise engaged in the use of marijuana while on the premises of the employer or during the hours of employment; or
(b) Was under the influence of marijuana while on the premises of the employer during the hours of employment, provided that a positive test result for marijuana cannot provide the sole basis for the employer's good faith belief; or

(iii) Acting to exclude a qualifying patient from being employed in or performing a safety sensitive position based on the employer's good faith belief that the qualifying patient was engaged in the current use of marijuana.

31. Section (f)(3)(B)(i) does allow a drug-free workplace policy and drug testing, but as sections (3)BD)(ii) and (iii) explain, that drug testing and drug-free workplace policy only applies to *on premises* marijuana influence by qualified patients, and employers can exclude current medical marijuana users *only* from designated safety sensitive positions.

32. The Arkansas Supreme Court has consistently made clear that law "should be construed so that no word is void, superfluous, or insignificant, and meaning and effect must be

given to every word contained therein, if possible, see *Locke v. Cook*, 245 Ark. 787, 434 S.W.2d 598 (1968)" *AT&T Communications of the Southwest, Inc. v. Arkansas Public Service Commission*, 67 Ark. App. 177, 189 (Ark. Ct. App. 1999).

33. To read that Amendment 98 allows a qualify medical marijuana patient to be fired or excluded from employment for a positive marijuana drug test merely because an employer has a drug testing and drug free workplace policy under Section(f)(3)(B)(i) completely renders Sections (3)(a), and (3)(B)(ii)-(iii) meaningless.

34. Instead, the general Section(3)(B)(i) must be read in harmony with the more specific Sections (3)(B)(ii) and (iii) to delineate the exception to the protections of Section (3)(a).

35. Further, section 3(C)(vi)'s protection for "refusing to hire an applicant" under (f)(3) is not a categorical exception to the plain meaning of (f)(3)(A) that "an employer shall not discriminate against an applicant...," nor is it an addition to the list of prohibited causes of action in Section (3)(B).

36. Instead, section 3(C)(vi) protection is simply an authorized action an employer is allowed to take for applicants who fail the requirements of Section (3)(A)-(B).

37. For an illustrative example of the section 3(C)(vi) protection for employers, an applicant for a non-safety sensitive position would not be protected if they failed a pre-employment test for the presence of cocaine. That applicant could not sue even if they were a medical marijuana patient.

38. Likewise, if a job applicant failed a marijuana test but it was for a safety sensitive position, that applicant could not sue the employer under (3)(B)(iii).

39. However, an employer cannot fire or decline to hire a medical marijuana patient for a non safety-sensitive position because of a positive marijuana test away from work because of Sections (3)(B)(ii) and (iii) that outline the protections of Section (3)(a).

40. To find otherwise is to also render the words "safety sensitive" (3)(B)(iii) meaningless.

41. Further, the Governor of Arkansas at no point was given power by the Legislature to issue a temporary Executive Order overriding Act 593 of the 2017 General Assembly because of COVID, as such an executive order could only apply, if at all, to statutes, regulations, or policies, and not to Act 593 of 2017 which is a Constitutional Amendment.

42. In other words, it is not a defense to this action that any of Governor Hutchinson's executive orders overrode Arkansas medical marijuana patient employment law, because that law is Amendment 98 to the Arkansas Constitution, which no Governor can override by any Executive Order.

43. In sum, the effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect their status as an employee because of her qualifying medical marijuana patient status.

44. The unlawful employment practices complained of above were and are intentional.

45. The unlawful employment practices complained of above were done with reckless indifference to the constitutional and statutorily protected rights of Plaintiff.

46. Pursuant to the Arkansas Civil Rights Act, as amended, Plaintiff is entitled to, and they seek, the sum of her lost wages or salary, benefits and/or other compensation denied or loss to her by reason of Defendant's violations of the Arkansas Constitution and ACRA, plus any

interest she is entitled to for these causes because Defendant's violations were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of the ACRA.

47. As a direct and proximate result of Defendant's violations of the Arkansas Constitution and Arkansas Civil Rights Act, Plaintiff has suffered the following injuries and damages:

   a. She was denied a significant sum of income in the past and will continue to do so in the future;
   b. She incurred more expenses due to higher rent and cost of living as she was unable to relocate to the El Dorado area due to the job offer being rescinded;
   c. She has lost the potential fringe benefits of her employment;
   d. Plaintiff has incurred and will incur substantial attorneys' fees;
   for all of which she should be compensated.

48. Plaintiff should be awarded attorneys' fees pursuant to A.C.A. §16-123-105.

## V.    Second claim for relief:
### Class action violation of Amendment 98 to the Arkansas Constitution

49. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

50. This is also a class action under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff Epps is a members of a class of employees and applicants who were denied employment in violation of Amendment 98 to the Arkansas Constitution.

51. Plaintiff asserts violations of Amendment 98 on behalf of a class of all persons who were denied or fired from employment by Defendant solely on the basis of their medical marijuana patient status from the date of one year prior to the date of the filing of this lawsuit, through the time of the trial of this case.

52.     The Class is so numerous that joinder of all members is impractical. While the exact number and identities of Class members are unknown at this time, and can only be ascertained through appropriate discovery, Plaintiff believe that at least forty (40) but as many as one-hundred (100) putative class members have applied to work for Defendant but been denied employment, or worked for Defendant and were denied continued employment, as described herein, during the applicable statutory period.

53.     This litigation is properly brought as a class action because of the existence of questions of fact and law common to the Class which predominate over any questions affecting only individual members, including:

(a)     The policy of Defendant to fire and not hire medical marijuana patients who test positive for marijuana only;

(b)     Whether Plaintiff and members of the Class were not hired for that reason alone; and

(c)     Whether the back pay owed to Plaintiff and members of the Class can easily be calculated by the rate of pay of the positions applied for or worked in and the date of denial or firing.

54.     This litigation is properly brought as a class action because Plaintiff's claims are typical of the claims of the members of the Class, inasmuch as all such claims arise from Defendant's standard policies and practices, as alleged herein. Like all Class members, Plaintiffs were injured by Defendant's policies and practices of firing and failure to hire qualified medical marijuana patients.


55. Plaintiff has no interests antagonistic to the interests of the other members of the Class. Plaintiff ais committed to the vigorous prosecution of this action and has retained competent counsel experienced in class litigation. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

56. A class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy given the following factors:

A. Common questions of law and/or fact predominate over any individual questions which may arise, and, accordingly, there would accrue enormous savings to both the Court and the Class in litigating the common issues on a class-wide instead of on a repetitive individual basis;

B. Despite the relatively small size of individual Class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a Class action on a cost-effective basis, especially when compared with repetitive individual litigation; and

C. No unusual difficulties are likely to be encountered in the management of this class action in that all questions of law and/or fact to be litigated at the liability stage of this action are common to the Class.

57. Plaintiff is aware of no members of the proposed class who have an interest in individually controlling the prosecution of separate actions; neither is Plaintiff aware of any other litigation concerning this particular controversy.

58. Class certification is fair and efficient because prosecution of separate actions by individual Class members would create a risk of differing adjudications with respect to such individual members of the Class, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

59. The class is defined as all applicants and employees who were denied or fired from employment by Defendant in Arkansas, solely on the basis of their medical marijuana patient status from the date of one year prior to the date of the filing of this lawsuit.

60. Plaintiff demands a jury trial.

WHEREFORE, Plaintiff Latricia Epps prays for an award of a class action; for judgment against Defendant; for a jury trial; for attorney's fees and costs; for punitive and constitutional damages; and for all other proper relief.

Respectfully submitted,

*/s/*

**LATRICIA EPPS, Individually and on Behalf of All Others Similarly Situated, PLAINTIFF**

WH Law | We Help
1 Riverfront Pl. – Suite 745
North Little Rock, AR 72114
(501) 891-6000

By: *Chris Burks*
Chris Burks (ABN: 2010207)
chris@wh.law